# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**DAKOTA HUTCHINSON,**                                    **CIVIL ACTION**
**on behalf of ARRIE HUTCHINSON**

**VERSUS**
                                                         **NO. 20-334-BAJ-SDJ**

**ANDREW M. SAUL**
**COMMISSIONER OF SOCIAL SECURITY**

## NOTICE

Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court for the Middle District of Louisiana.

Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the proposed findings of fact and conclusions of law in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on February 16, 2022.

_____
**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**DAKOTA HUTCHINSON,**                          **CIVIL ACTION**
**on behalf of ARRIE HUTCHINSON**

**VERSUS**

                                                **NO. 20-334-BAJ-SDJ**

**ANDREW M. SAUL**
**COMMISSIONER OF SOCIAL SECURITY**

---

## REPORT AND RECOMMENDATION

Dakota Hutchinson (Plaintiff) on behalf of his deceased father, Arrie Hutchinson (Hutchinson), seeks judicial review of a final decision of the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g), denying Hutchinson's application for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act. (R. Doc. 1). Having found all the procedural prerequisites met, the Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you… file an action in Federal district court…"). For the reasons given below, the Court **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED,** Plaintiff's *Motion for Summary Judgment* (R. Doc. 13) be **DENIED,** and Plaintiff's appeal be **DISMISSED with prejudice**.

## I.     PROCEDURAL HISTORY

Arrie Hutchinson filed his application for disability insurance benefits and supplemental security income on May 18, 2017, alleging that he became disabled on January 1, 2016. (Tr. 192, 194). Hutchinson's alleged disabling conditions include back problems, sciatic nerve damage, disc

problems, sodium levels off, high blood pressure, acid reflux, sleep problems, and nerve problems (Tr. 218). Hutchinson's application for benefits was initially denied by the Social Security Administration on August 24, 2017. (Tr. 92). Thereafter, Hutchinson filed a written request for a hearing on October 9, 2017. (Tr. 101). A Notice of Hearing was issued for September 24, 2018 (Tr. 129). Due to the death of Arrie Hutchinson, a Request for Postponement and Notice Regarding Substitution of Party Upon Death of Claimant was filed and the hearing was reset. (Tr. 155, 154) An Administrative Law Judge ("ALJ") held an in-person hearing on January 14, 2019, after which she issued an unfavorable decision on May 10, 2019. (Tr. 7).

The ALJ found that Hutchinson was not disabled and therefore not entitled to disability benefits. The ALJ concluded Hutchinson suffered from the following severe impairments: degenerative disc disease of the lumbar spine, hypertension, generalized anxiety disorder, and depression. (Tr. 12). However, the ALJ concluded that Hutchinson did not have an impairment or combination of impairments that met the severity of one of the listed impairments in the social security regulations. (Tr. 13-14). The ALJ also found that Hutchinson had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), but Hutchinson could lift and carry 20 pounds occasionally and 10 pounds frequently, and could sit, stand, and/or walk for six hours in an eight-hour workday. (Tr. 14). The ALJ concluded that Hutchinson was unable to perform past relevant work as a stock clerk and maintenance worker, but that there are jobs that exist in significant numbers in the national economy that Hutchinson could have performed. (Tr. 20-21). Based on this finding, the ALJ concluded that Hutchinson was not disabled. (Tr. 21).

Plaintiff's request for review of the ALJ's decision (Tr. 186) was denied by the Appeals Council on April 2, 2020. (Tr. 1-6). The ALJ's decision rested as the Commissioner's final

decision when the Appeals Council denied Plaintiff's second request for review. *See* 20 C.F.R. § 404.981.

## II.    STANDARD OF REVIEW

The Court's review of the Commissioner's decision is limited under 42 U.S.C. § 405(g) to two inquiries: (1) whether there is substantial evidence to support the findings of the Commissioner and (2) whether the correct legal standards were applied. *Anthony v. Sullivan,* 954 F.2d 289, 292 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as less than a preponderance but "more than a mere scintilla." *Bowling v. Shalala,* 36 F.3d 431, 434 (5th Cir. 1994). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan,* 895 F.2d at 1022. The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (internal quotations omitted). The Court may not reweigh the evidence or try the issues *de novo,* nor may it substitute its judgment for that of the Commissioner. *Cook v. Heckler,* 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000) (quoting 42 U.S.C. § 405 (g)). If, on the other hand, the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal

principles were followed, it is grounds for reversal. *See Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III.    ALJ'S DETERMINATION

To qualify for benefits, the claimant must establish that he is disabled within the meaning of the Social Security Act ("SSA"). *Herron v. Bowen,* 788 F.2d 1127, 1131 (5th Cir.1986) (internal citations omitted). The SSA defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Selders v. Sullivan,* 914 F.2d at 618.

The Commissioner (through an ALJ) applies a five-step sequential analysis to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4). First, the claimant must prove he or she is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities…" 20 C.F.R. § 404.1520(c). At step three, the ALJ must conclude the claimant is disabled if he or she proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he or she is incapable of meeting the physical and mental demands of his or her past relevant work.  20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps, then the burden shifts to the Commissioner to prove, considering the claimant's RFC, age, education, and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the

4

Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ made the following determinations:

1.    The decedent met the insured status requirements of the Social Security Act through December 31, 2020.

2.    The decedent has not engaged in substantial gainful activity since January 1, 2016, the alleged onset date. 20 C.F.R. § 404.1571 *et seq.*

3.    The decedent has the following severe impairments: degenerative disc disease of the lumbar spine, hypertension, generalized anxiety disorder, and depression. 20 C.F.R. § 404.1520(c) and 416.920(c).

4.    The decedent does not have an impairment or combination of impairments that met or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1; 20 C.F.R. § 404.1520(d), 404.1525 and 404.1526, 416.920(d), 416.925, and 416.926.

5.    The decedent has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except he could occasionally lift and/or carry 20 pounds, and frequently lift and/or carry 10 pounds; could stand and/or walk for a total of six hours in an eight hour work day; could sit for six hours in an eight hour work day; never climb ladders ropes, and scaffolds; could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The decedent could perform simple, routine, and repetitive work; with occasional contact with others, the general public, supervisors and coworkers, and he could adapt to work situations.

6.    The decedent was unable to perform past relevant work. 20 C.F.R. § 404.1565 and 416.965.

7.    The decedent was born on March 2, 1967 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The decedent subsequently changed age category to closely approaching advanced age. 20 C.F.R. § 404.1563 and 416.963.

8.    The decedent had a limited education and was able to communicate in English. 20 C.F.R. § 404.1564 and 416.964.

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the decedent was "not disabled," whether or not the claimant has transferrable job skills. See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2.

10.     Considering the decedent's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the decedent could have performed. 20 C.F.R. § 404.1569, 404.1569a, 416.969, and 416.969a.

## IV.    DISCUSSION

Plaintiff advances four arguments in support of his request to reverse the ALJ's decision, which will be addressed within the framework of the five-step analysis. Plaintiff contends that the ALJ improperly failed to consider cardiovascular impairment at Step 2. (R. Doc. 13 at 13). At Step 3, Plaintiff avers that remand is required because the ALJ failed to analyze § 1.04(A) of the Listings. (R. Doc. 13-2 at 7). Plaintiff contends that the ALJ committed reversible error at Step 4 by adopting the opinions of a non-examining state agency consultant (R. Doc. 13 at 9). Finally, Plaintiff argues the ALJ committed reversible error by misrepresenting relevant evidence and relying upon irrelevant evidence. (R. Doc. 13 at 11).

### A.    Any Error at Step 2 by the ALJ in Failing to State the Severity of Cardiovascular Impairment was Harmless

Plaintiff first contends that the "ALJ failed to follow a proper legal standard and committed reversible error by conducting no analysis of Hutchinson's cardiovascular impairment which ultimately caused his death." (R. Doc. 13-1 at 5). Plaintiff contends that 20 C.F.R. § 404.1505(a) requires a finding of disability for a condition which "is expected to result in death" (R. Doc. 13-1 at 13), and Hutchinson was diagnosed with progressive angina and sinus tachycardia and ultimately died of cardiac arrest on June 18, 2018 (R. Doc. 13-1 at 13). The Commissioner concedes that the ALJ did not note that Hutchinson's cardiac impairment was "severe" at Step 2 but argues that any omission at Step 2 amounts to harmless error because the Commissioner fully considered Hutchinson's cardiac condition in his analysis beyond Step 2. (R. Doc. 17 at 14-15).

For purposes of step two of the disability analysis, an impairment is severe if it is an abnormality that has more than a minimal effect on an individual's ability to work, irrespective of

age, education, or work experience. *Stone v. Heckler,* 752 F.2d 1099, 1101 (5th Cir.1985); *see also* 20 C.F.R. § 404.1521; SSR 96–3p, 1996 WL 374181 (July 2, 1996). To meet this severity threshold, the claimant need only "make a de minimis showing that her impairment is severe enough to interfere with her ability to do work." *Anthony v. Sullivan,* 954 F.2d 289, 294 n. 5 (5th Cir.1992). The ALJ's determination of whether the claimant has met the severity standard must be affirmed so long as it is supported by substantial evidence. *See Id.* at 295–96 (holding that "the record furnishes minimally adequate support for the Secretary's finding that [claimant] did not establish a severe impairment").

Plaintiff contends that evidence shows that the ALJ erred in failing to find that Hutchinson's cardiovascular impairment constituted a severe impairment. Particularly, Plaintiff notes Hutchinson's May 2017 visit to his cardiologist reporting a history of shortness of breath and chest pain (R. Doc. 13-2 at 13; citing Tr. 521.) Plaintiff also emphasizes Hutchinson's diagnoses of "progressive angina" and "sinus tachycardia" and death of cardiac arrest on June 18, 2018. (R. Doc. 13-2 at 13).[1] The ALJ determined that Plaintiff had the following "severe" medical impairments: degenerative disc disease of the lumbar spine, hypertension, generalized anxiety disorder, and depression. (Tr. 12). While the ALJ found that Hutchinson had an impairment related to his cardiovascular system, i.e., hypertension, the ALJ did not specifically address whether "cardiovascular impairment" constituted a separate severe impairment. The issue is whether the ALJ erred in failing to find that Plaintiff's cardiovascular impairment was a separate severe impairment within the meaning of Step 2 of the disability analysis.

---

[1] Whether Hutchinson's death was caused by cardiovascular impairment is unclear to the Court. Hutchinson's death certificate (Tr. 615) states "anoxic brain injury" with an onset of 5 days before death and "cardiac arrest" with an onset of 12 hours before death. The record is devoid of any further medical information on the cause of death, including what caused the initial deprivation of oxygen to the brain 5 days before the cardiac arrest.

"[A]t step two of the five step analysis, the adjudicator must determine whether any identified impairments are 'severe' or 'not severe.' "*Herrera v. Comm'r of Social Security,* 406 F. App'x 899, 903 (5th Cir.2010) (citing 20 C.F.R. § 404.1520(a)(4)(ii)). Here, Hutchinson identified "heart problems" as a disabling condition on his application for benefits (Tr. 218), progressive angina and sinus tachycardia was identified in the cardiologist's medical records, (Tr. 608) and the condition was discussed at the evidentiary hearing. During the hearing, Plaintiff's counsel argued that the condition satisfied the requirements for a finding of disability. (Tr. 33-37). Since Hutchinson's cardiac impairment was specifically discussed at the hearing, it is unclear why the ALJ did not address whether it was a severe impairment.

The next question is whether the ALJ committed reversible error. "Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected." *Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir.1988). In the context of an error at step two of the disability analysis, the Fifth Circuit has consistently held that an "ALJ's failure to assess the severity of [a claimant's] impairments at step two is not a basis for remand" where the ALJ proceeds beyond step two and determines that a claimant, despite severe impairments, "retained the residual functional capacity to do other work." *Herrera,* 406 F. App'x at 903; *See also Reyes v. Sullivan,* 915 F.2d 151, 154 (5th Cir.1990) ("Because the ALJ proceeded to the third step in evaluating [claimant's] claim, we must infer that the ALJ found a severe impairment."); *Adams v. Bowen,* 833 F.2d 509, 512 (5th Cir.1987) (holding that there is "no ground to remand" where the "case did not depend upon a conclusion of the 'non-severity' of [claimant's] condition"); *Mays,* 837 F.2d at 1364 ("[I]f the ALJ proceeds past the impairment step in the sequential evaluation process the court must infer that a severe impairment was found.").

8

Applying this harmless error standard, the ALJ's step two determination must be affirmed. The ALJ determined that Hutchinson was not disabled at step five of the disability analysis, based on the finding that, despite limitations that prevented Hutchinson from performing his past work, he retained the functional ability to perform jobs existing in significant numbers in the national economy. (Tr. 21-22.) Because the ALJ proceeded past step two of the disability analysis, it should be presumed that he found Hutchinson's medical conditions to be severe, including his cardiac impairment. *Reyes,* 915 F.2d at 154.

This is particularly appropriate here because the ALJ considered all of Hutchinson's cardiac symptoms in determining whether Hutchinson was disabled at steps four and five of the analysis. The ALJ considered Hutchinson's cardiac symptoms and history of treatment in connection with his disability analysis at steps four and five. (Tr. 17.) Specifically, the ALJ noted in his decision that Hutchinson "presented to the hospital on April 3, 2017 with chest pain and saw a cardiologist…he had an angiogram that demonstrated…no acute cardiopulmonary abnormality…the decedent had possible substance withdrawal and polysubstance abuse…the claimant had an echocardiogram that demonstrated an ejection-fraction rate of 55-60% and left ventricular systolic function was normal." (Tr. 17.) The ALJ also considered Hutchinson's post-hospitalization nuclear stress test results, showing "reversible ischemia with good heart function" and angiogram, which showed "no evidence of obstructive disease" (Tr. 17). The ALJ took this history into account in determining whether Hutchinson was able to return to his prior work (step four) and whether he could perform other available jobs (step five). (Tr. 20-22.) Because the ALJ decided Plaintiff's disability claim at step 5–and considered all of Hutchinson's symptoms in doing so—any error by the ALJ at step two was harmless.

**B.  Any Error by the ALJ at Step 3 in Failing to Analyze Listing 1.04A was Harmless**

Plaintiff asserts that the ALJ erred at step three in "neglecting to conduct any analysis of §
1.04(A) of the listings." (R. Doc. 13-2 at 7). The Commissioner concedes that the ALJ did not
discuss § 1.04(A) at step three but argues that she did not commit reversible legal error because
the Plaintiff did not meet his burden of proof that Hutchinson satisfied the requirements for Listing
1.04(A) (R. Doc. 17 at 6-7).

At step three of the disability analysis, "the medical evidence of the claimant's
impairment(s) is compared to a list of impairments presumed severe enough to preclude any
gainful activity." *Loza v. Apfel,* 219 F.3d 378, 390 (5th Cir.2000). "If the impairment meets or
equals one of the listed impairments, the claimant is conclusively presumed to be disabled." *Bowen
v. Yuckert,* 482 U.S. 137 (1987) (citing 20 C.F.R. § 404.1520(e)). "Impairments found in the
Listings are those that the Commissioner acknowledges are so severe that they automatically
preclude substantial gainful activity." *Henson v. Barnhart,* 373 F.Supp.2d 674, 684
(E.D.Tex.2005) (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)). An ALJ is required to state
sufficient reasons for an adverse determination at Step 3. *See Audler v. Astrue,* 501 F.3d 446, 448
(5th Cir.2007) (holding that "the ALJ erred in failing to state any reason for her adverse
determination at step 3").

Here, the ALJ found that Plaintiff did not have "an impairment or combination of
impairments that met or medically equals one of the listed impairments…" (Tr. 13.) In making this
finding, the ALJ only discussed Listing 12.04, which is relevant to Plaintiff's impairments,
generalized anxiety disorder and depression. (Tr. 13). Unfortunately, the ALJ did not specifically
discuss (or even mention) Listing 1.04A, which addresses disorders of the spine. It is unclear why

the ALJ did not do so since this is the Listing that Plaintiff's counsel emphasized at the hearing. (Tr. 35.)

Assuming the ALJ erred at Step 3 in failing to mention Listing 1.04A, "we must still determine whether this error was harmless." *Id.* (citing *Morris v. Bowen,* 864 F.2d 333, 334 (5th Cir.1988)). In considering whether a Step 3 error was harmless in *Audler,* the Fifth Circuit reviewed the evidence to determine if the claimant had demonstrated that she satisfied all the criteria of the Listing at issue. *Id.* at 448–49. The record included findings from claimant's treating physician that satisfied the Listing, and "[n]o medical evidence was introduced to contradict these findings." *Id.* at 449. The Fifth Circuit concluded that, in the absence of some explanation from the ALJ, the claimant "met her burden of demonstrating that she meets the Listing," and thus "her substantial rights were affected by the ALJ's failure to set out the bases for her decision at step three." *Id.*

Applying this analysis here, Plaintiff must establish that the impairment "meet[s] *all* of the specified medical criteria" of Listing 1.04A. *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990) (emphasis in original); *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir.1991) ("[T]o secure a finding of disability without consideration of age, education, and work experience, a claimant must establish that his impairment meets or equals an impairment enumerated in the listing of impairments in the appendix to the regulations."). The criteria in the Listings are "demanding and stringent." *Falco v. Shalala,* 27 F.3d 160, 162 (5th Cir.1994).

The listing at issue here, Listing 1.04A, applies to disorders of the spine. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A. It requires a spinal disorder resulting in compromise of a nerve root or the spinal cord accompanied by evidence of nerve root compression characterized by four specified symptoms or medical criteria. Specifically, Listing 1.04A states:

11

1.04 *Disorders of the spine* (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

As the introductory paragraphs to the Section 1.00 listings make clear, a claimant is required to prove a loss of function as a result of a musculoskeletal impairment by demonstrating either an "... inability to ambulate effectively on a sustained basis ..., or the inability to perform fine and gross movements effectively on a sustained basis ..." 20 C.F.R. Part 404, Subpt. P., App. 1, § 1.00(B)(2)(a); *Audler,* 501 F.3d at 448–49. Furthermore, "[t]he inability to ambulate effectively or the inability to perform fine and gross movements effectively must have lasted, or be expected to last, for at least 12 months." § 1.00(B)(2)(a). As this is a third-step inquiry under § 416.920, it is the claimant who bears the burden of proving that his impairment or combination of impairments meets or equals a listing. *Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir.1999). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990).

There is indication in the medical records that Hutchinson had degenerative disc disease with compromise of a nerve root, causing neuro-anatomic distribution of pain,[2] limited range of motion and motor loss. However, the Step 3 error was harmless because Plaintiff fails to meet his burden of proof. The records do not show Hutchinson meets at least two of the criteria of Listing

---

[2] A neuroanatomic distribution of pain "entails pain radiating to the extremities[.]" *Jordan v. Astrue,* No. 101899, 2012 WL 443791, at *7 (W.D. La. Jan.13, 2012).

1.04A: (1) positive straight leg raising test in both supine and sitting positions, and (2) inability to effectively ambulate or the inability to perform fine and gross movements effectively.

Hutchinson was treated for complaints of low back pain by Mark Pitre, P.A at North Oaks Orthopedic Spine Clinic. (Tr. 292-309). On his initial visit on December 14, 2015, Pitre reviewed Hutchinson's lumbar MRI from November 11, 2015, which showed annular disruption at L5-S1 with no mass effect and moderate facet hypertrophy at lower levels with no severe mass effect. Hutchinson reported lower back pain radiating into his left buttock and posterior thigh with numbness in his left calf. Hutchinson had full strength in all muscle groups, but decreased pinprick at L3-L4 dermatomal patterns. His gait showed no ataxia and was mildly antalgic. The straight leg raising test was negative bilaterally. Pitre diagnosed Hutchinson with sacroiliitis, annular tear of lumbar disc, and lumbar facet syndrome.

Hutchinson saw Pitre again on June 7, 2016, and August 8, 2016. On both visits Pitre noted left leg radiculitis, stable gait, positive straight leg raising test in the seated position, and diagnosed Hutchinson with lumbar radiculopathy. (Tr. 300, 301, 305, 306). Hutchinson attended physical therapy at North Oaks, ordered by Pitre. (Tr. 315-375). The physical therapy records show positive straight leg raising test on the left side in the seated position only. (Tr. 316). Pitre also recommended epidural steroid injections, but there is no evidence in the record that Hutchinson ever followed through with the injections. (Tr. 301, 309).

Listing 1.04A requires a positive straight leg raising test in both the seated and supine position. In his Memorandum in Support of Motion for Summary Judgment, Plaintiff points to a positive straight leg test (R. Doc. 18 at 3, citing Tr. 555) that occurred on or about November 4, 2015. That positive test does not indicate whether it was conducted in the seated or supine position. Every other positive test in the records was in the seated position only. (Tr. 301, 306, 316). Plaintiff

cites to no other portion of the transcript supporting a finding that this requirement of Listing 1.04A is satisfied. The Court has likewise not discovered such support. Without any evidence of a positive straight leg raising test in the supine position, any failure by the ALJ to discuss the reasoning behind the Step 3 decision is harmless. *Miller v. Astrue*, 2012 WL 3255595, at *5 (M.D. La. June 25, 2012) (Plaintiff was not disabled at step 3, as "Listing 1.04 requires positive straight leg raise tests in both the sitting and supine positions, and the record is devoid of any evidence that the few positive straight leg raise tests conducted on plaintiff occurred in both the sitting and supine positions."); *see also Carrillo v. Astrue*, 2010 WL 2136438, at *6 (W.D. Tex. May 26, 2010) (substantial evidence support ALJ's finding that claimant did not meet Listing 1.04A where record did not show positive straight leg raising tests, both sitting and supine, "for any period of 12 continuous months"); See also, *Banks v. Colvin*, 2018 WL 1528806, at *5 (M.D. La. Feb. 26, 2018) (Courts in this Circuit have consistently held that Listing 1.04 requires positive straight leg raise tests in both the sitting and supine positions). Because Plaintiff has not shown "positive straight leg raising test (sitting and supine)," as required by Listing 1.04A for a period of 12 months, Plaintiff has not met his burden of establishing that Hutchinson's back condition met or equals the criteria for any listed impairment. Accordingly, any error in the ALJ's failure to explain why Hutchinson failed to meet the criteria of 1.04A at step three of the sequential evaluation process was harmless.

Additionally, any error at Step 3 was harmless because Plaintiff cannot meet his burden of proof that Hutchinson was unable to effectively ambulate or unable to perform fine and gross movements effectively. The Social Security Regulations define "inability to effectively ambulate" as:

> [A]n extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or

complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.) [ ]

To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single handrail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id*.

Furthermore, 1.00(B)(2)(a) requires that "[t]he inability to ambulate effectively or the inability to perform fine and gross movements effectively must have lasted or be expected to last 12 months." *Id*. The regulations direct that the determination as to whether a claimant can ambulate effectively is "based on the medical and other evidence in the case record." 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00(2)(a).

Plaintiff does not address this requirement of Listing 1.04A in his briefing, nor does he point to any evidence in the record that would indicate Hutchinson would fit the definition of "inability to ambulate effectively" for a period of 12 months as described above.[3] In this case, although Hutchinson self-reported some difficulty with walking distances exceeding 200 feet (Tr. 235), he was able to ambulate outside the home and did not need an assistive device. *See* 20 C.F.R. Subpart P, App. 1, Section 1.00B(2)(b)(1). Also, for the period at issue, there is no creditable

---

[3] Plaintiff points to references in the physical therapy records that Hutchison had veering and weaving gait and impaired balance (R. Doc. 18 at 3). These therapy notations do not rise to the level of impairment as described in Listing 1.04A.

evidence of an inability to perform fine and gross movements effectively. *See* 20 C.F.R. Subpart P, App. 1, Section 1.00B(2)(c).

### C. The ALJ did not Err at Step 4 by Considering Non-Examining Medical Consultants' Opinions

The Plaintiff contends the ALJ erred by adopting the opinion of non-examining state agency medical consultants when the ALJ made his residual functional capacity ("RFC") determination. The Social Security Administration recently promulgated a new rule regarding RFC determinations to govern all claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Because Hutchinson filed his DIB and SSI applications in May of 2017, the new rule applies. This rule addresses how the Commissioner is to consider and evaluate medical opinions and prior administrative medical filings in evaluating a claimant's residual functional capacity and eliminated the longstanding "treating-physician rule," which required the ALJ to give a treating physician's opinion "controlling weight" in the absence of certain other specific findings. *See* 20 C.F.R. § 404.1527(c)(2) (describing the former "treating physician" rule).

The new rule states that the Commissioner is no longer required to defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Id.* at § 404.1520c(a). Instead, the Commissioner is to consider all medical opinions and prior administrative medical findings using the same specific factors outlined in the rule, the most important of which are supportability and consistency. *Id.* at § 404.1520c(b)(2). The other factors are treatment relationship with the claimant, specialization, and other factors, such as familiarity with other evidence in the claim. *Id.* at § 404.1520c(c). The Commissioner must articulate how persuasive he finds each of the opinions in the record and explain his conclusions with regard to the supportability and consistency factors. *Id.* at § 404.1520c(b)(2). The Commissioner may, but is not required to, articulate the consideration of the

other factors, unless the Commissioner finds that "two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same." *Id.* at § 404.1520c(b)(3). In these situations, the Commission must articulate consideration of the other factors as well.

Medical consultant, Dr. Karl Boatman, reviewed Hutchinson's medical records and determined on August 23, 2017, that his symptoms were only partially consistent with the medical and non-medical evidence in the file:[4]

> The claimant's MDI's can reasonably be expected to produce the alleged pain and symptoms. However, the objective medical evidence alone does not reasonably substantiate the claimant's allegations about the intensity, persistence, and functionally limiting effects of the symptoms. The factors most informative in assessing the consistency of the individual's statements are: ADL's; the location, duration, frequency and intensity of the claimant's pain and symptoms; precipitating and aggravating factors; and medication treatment. Considering the total medical and non-medical evidence in the file, the claimant's statements regarding symptoms are considered only partially consistent with the totality of the evidence.

(Tr. 80). Dr. Boatman noted that there was no indication of any other medical opinion from any other source. (Tr. 80). The ALJ found Dr. Boatman's opinion persuasive given his familiarity with assessment of functionality under the Social Security Act. (Tr. 20).[5] Plaintiff does not contend that the ALJ impermissibly accepted the opposing opinion of Dr. Boatman over the opinion of a treating physician in arriving at the RFC determination. Instead, Plaintiff contends Dr. Boatman's opinion should not have been accepted considering Hutchinson's pain complaints and other evidence in the record suggesting his disability precluded light work. (R. Doc. 13-2, at 9-10).

---

[4] The Commissioner also utilized medical consultant, Cynthia Kampschaefer, who evaluated Hutchinson's mental health impairments. Plaintiff's brief makes no argument about the mental health medical consultant's opinion.

[5] The ALJ afforded less weight to the assessments by Dr. Francis, conducted in April of 2015 and Dr. Durdin, conducted in 2015 because of they were more "remote in time." However, it appears from the discussion of these assessments that neither Dr. Francis nor Dr. Durdin recommended sedentary work based on any of the relevant disabling conditions. Dr. Durdin had some concern about Hutchinson's ability to maintain a 40-hour work week due to alcohol dependency (Tr. 281-282) Dr. Francis completed a functional capacity exam and found Hutchinson was able to work with some restrictions. (Tr. 284-290).

The ALJ's Determination extensively discusses the medical evidence in the record that supports the RFC assessment,[6] including, but not limited to, the following excerpt:

> As for the decedent's statements about the intensity, persistence, and limiting effects of his or her symptoms they are inconsistent and not reasonably supported by the medical evidence in the record. The undersigned notes that the claimant was treated conservatively which is inconsistent with allegations of disabling pain. The record indicates the claimant's persistent symptoms of hypertension and degenerative disc disease were relatively mild and treatable with medications. The objective imaging studies demonstrated the claimant's degenerative disc disease was mild. Dr. Pitre counseled the claimant that he felt with appropriate conservative treatment he should be able to keep his lumbar symptoms under good control and he began physical therapy. The undersigned would note a physician's unrestricted recommendations to increase physical exercise and undergo physical therapy is inconsistent with a claim of disabling physical limitations. The claimant was making progress in physical therapy, but reinjured himself on two occasions, when he was helping to deck a roof and falling off a tractor. When claimant followed up with Dr. Pitre after his trial of physical therapy, the claimant had worsening lumbar radiculopathy to which he was referred for epidural steroid injections, and the medical evidence does not reflect further treatment by Dr. Pitre or injection therapy. Subsequent physical examinations of March and May of 2017 and February of 2018 were relatively normal, with no acute findings concerning tenderness, pain, or limitations caused by his degenerative disc disease…
>
> There is no indication in the medical records that any of the decedent's treating physicians gave any opinion on the [sic] his ability to work. Given the decedent's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by a treating doctor.
>
> With regard to activities of daily living, the undersigned finds that the decedent engaged in activities that were not limited to the extent one would expect, given the claimant's complaints of disabling symptoms and limitations, including helping a friend deck a roof, and operate a tractor. (Exhibit B4F). The Administrative Law Judge does not discount all of the claimant's complaints and recognizes that he did experience limitations. However, no physician placed any functional restrictions on his activities that would have precluded work activity with the previously mentioned restrictions.

(Tr. 18).

---

[6] The ALJ discussed the medical evidence at length, including testimony at the hearing and Hutchinson's medical records, including his imaging studies; visits to Stewart Family Medicine, Courtney Taylor, N.P., and Dr. Marc Pitre; physical therapy at North Oaks Orthopedic Spine Clinic; hospitalization at North Oak for chest pain and apparent polysubstance withdrawal; and cardiology treatment with Dr. Parker.

Conflicts in the evidence, including the medical evidence, are resolved by the ALJ, not the reviewing court. *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985). The ALJ summarized the evidence relevant to the factors and articulated legitimate reasons for his decision. The inquiry for the Court is whether the record as a whole "yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). The ALJ properly articulated her consideration of the medical findings and the persuasiveness of the medical opinions. The objective medical evidence provides substantial evidence to support the ALJ's RFC determination. *See Martinez v. Saul*, 2021 WL 2253912, at *5-6 (W.D. Tex. June 3, 2021) (finding substantial evidence for the RFC where the ALJ considered all objective medical evidence in the record).

### D.  The ALJ did not Commit Reversible Error by Misrepresenting Relevant Evidence and Relying upon Irrelevant Evidence

Plaintiff contends that the ALJ misrepresented facts related to Hutchinson's work-related activity and improperly utilized medical information from medical practitioners unrelated to Hutchinson's back condition when evaluating Hutchinson's credibility.  Particularly, Plaintiff contends the ALJ gives the false impression that Hutchinson's physical therapy progress was interrupted due to a manual-labor injury when the injury occurred a year before the onset of disability. (R. Doc. 13-2 at 12). Next, Plaintiff contends the ALJ should not have cited medical records from Hutchinson's cardiologist and nurse practitioner as evidence that Hutchinson's back complaints lacked credibility because these visits were unrelated to his back condition. (R. Doc. 13-2 at 12).

As an initial matter, the Court notes that the ALJ was correct in her citation to the physical therapy note regarding Hutchinson's injury. The March 3, 2016 physical therapy visit note states:

> Came to therapy with additional pain. States he helped friend deck roof on new construction home over the weekend leaving patient with too much pain to come to therapy earlier during the week.

(Tr. 332). As noted in the excerpt above, the ALJ properly and correctly characterized this incident as occurring during the course of Hutchinson's physical therapy treatment and after the alleged disability onset of January 1, 2016.

As for the visits to the cardiologist and nurse practitioner in 2017 and 2018, these visits were noted by the ALJ in the larger context of Hutchinson's treatment history, particularly the discontinuation of treatment with Pitre for his back in August of 2016. The ALJ was pointing out that records from providers following the discontinuation of treatment with Pitre and the rejection of his recommendation for epidural steroid injections do not reflect disabling back complaints. In any event, the ALJ's credibility determination is entitled to great deference. *Newton v. Apfel,* 209 F.3d 448, 459 (5th Cir.2000). In this case, as set forth in detail in the excerpt above, the ALJ's credibility determination is supported by substantial evidence.

## V.    CONCLUSION

For the reasons given above, the Court **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED,** Plaintiff's *Motion for Summary Judgment* (R. Doc. 13) be **DENIED,** and Plaintiff's appeal be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on February 16, 2022.

_____
**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**